FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 13, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAURIE JO O., | NO: 2:18-CV-1-FVS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 12, 13. This matter was submitted for consideration without oral

argument. Plaintiff is represented by attorney Dana C. Madsen. Defendant is

represented by Special Assistant United States Attorney Alexis L. Toma. The Court,

having reviewed the administrative record and the parties' briefing, is fully

informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is

denied and Defendant's Motion, ECF No. 13, is granted.

**JURISDICTION**

Plaintiff Laurie Jo O.[1] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income on January 28, 2014, alleging an onset date of March 15, 2013. Tr. 187-91, 195-98, 226. Benefits were denied initially, Tr. 127-29, and upon reconsideration, Tr. 135-36. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 7, 2016. Tr. 56-100. On August 15, 2016, the ALJ issued an unfavorable decision, Tr. 33-49, and on November 3, 2017, the Appeals Council denied review. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1960 and was 55 years old at the time of the hearing. Tr. 187, 195. She graduated from high school and has a bachelor's degree in education. Tr. 9, 67. She has work experience as a social worker, optometric assistant, property manager, and energy assistance case aide. Tr. 67-74, 94. She testified she stopped

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~2

working because she was unable to function due to anxiety and depression. Tr. 75. She cannot drive because she cannot focus. Tr. 75. Her anxiety is overwhelming. Tr. 75. She takes medications but they do not work. Tr. 75-76. She feels very depressed and does not leave the house very often. Tr. 76. She has agoraphobia and is afraid to be around a lot of people. Tr. 77. She does not sleep well so she sometimes stays in bed all day. Tr. 81-82. She takes medications for her sleep issue but it does not work well. Tr. 82. She gets migraines and has vertigo and acid reflux. Tr. 88-90.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe

than one of the enumerated impairments, the Commissioner must find the claimant

disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the

claimant is capable of performing past relevant work, the Commissioner must find

that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the

claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this

determination, the Commissioner must also consider vocational factors such as the

claimant's age, education and past work experience. 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since March 15, 2013, the alleged onset date. Tr. 35. At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety and depression. Tr. 36. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 39-40.

The ALJ then found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> She is limited to unskilled and semi-skilled work; she is able to work in the presence of the public, but cannot be required to interact with

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~7

them; she needs a routine, predictable work environment that requires no more than simple decision-making; and she cannot perform at a production-rate pace.

Tr. 41.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 47. After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform such as fish cleaner, dining room attendant, laundry worker, and housekeeping cleaner. Tr. 47-48. Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 15, 2013, through the date of the decision. Tr. 48.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1.     Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2.     Whether the ALJ properly considered the medical opinion evidence. ECF No. 12 at 9.

/ / /

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~8

**DISCUSSION**

**A.     Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims.  ECF No. 12 at 10-11.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to

permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not consistent with the medical and other evidence in the record. Tr. 42.

First, the ALJ found there are significant gaps in Plaintiff's treatment history which undermine Plaintiff's allegations regarding the severity of her symptoms, and that Plaintiff's treatment has been routine and conservative in nature. Tr. 43. The ALJ is permitted to consider a claimant's lack of treatment in evaluating her symptom complaints. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Additionally, the type, dosage, effectiveness and side effects of medication taken

to alleviate pain or other symptoms as well as the medical treatment received to relieve pain or other symptoms are relevant factors in evaluating the intensity and persistence of symptoms.  20 C.F.R. §§ 416.929(c)(3)(iv), 416.929(c)(3)(v) (2011).  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007).   The ALJ observed that although Plaintiff testified she had continuous medical coverage and access to care during the period at issue, Tr. 86, the record reflects significant gaps in Plaintiff's treatment history.  Tr. 43.  The record includes notes from six appointments with her treating provider in 2014 at which depression and anxiety were discussed, but no other complaints of mental health issues until one month before the hearing in June 2016.  Tr. 43, 287, 290, 319, 322, 325, 338, 408.  The ALJ also noted that Plaintiff's treatment has been routine and conservative, consisting of prescriptions for psychiatric medications on only five occasions over the course of the record.  Tr. 43, 287, 292, 326, 340, 409.

Plaintiff cites *Nguyen v. Chater* which provides that it may be inappropriate to consider a claimant's lack of mental health treatment in evaluating her symptom complaints.  ECF No. 12 at 10 (citing 100 F.3d 1462, 1465 (9th Cir. 1996)).  However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints.  *Molina*, 674 F.3d at 1113-14.  Here, the ALJ noted

Plaintiff testified she did not seek mental health treatment from specialists because she felt "uncomfortable" facing her problems in counseling. Tr. 43, 84-86. The ALJ determined that Plaintiff's reason for failing to seek mental health treatment is unpersuasive and concluded her failure to seek significant treatment undermines her allegations of disabling symptoms. Tr. 43. Thus, the ALJ properly considered and made inferences from Plaintiff's relatively mild treatment of symptoms and lack of treatment, and this is a clear and convincing reason for giving less weight to Plaintiff's symptom claims.

Second, the ALJ found Plaintiff's own reports to providers do not support her disability allegations. Tr. 43. To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1509, 416.909; *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). The ALJ noted Plaintiff complained to her treating physician of psychological symptoms regularly for six to eight months in 2014, but after 2014 psychological complaints are recorded only sporadically. Tr. 43, 287-328, 338-401, 407-10. The ALJ observed Plaintiff's complaints are episodic, "and it is not even clear from her own reports that her impairment has lasted twelve consecutive months." Tr. 43. The ALJ reasonably found that Plaintiff's sporadic symptom complaints to her treating

provider undermine her allegations of disabling limitations. Tr. 43. This is a clear and convincing reason supported by substantial evidence.

Third, the ALJ found Plaintiff's statements to her providers varied from her testimony at the hearing. Tr. 43-44. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Thomas*, 278 F.3d at 958-59. The ALJ noted five examples of inconsistencies between Plaintiff's testimony and the record, Tr. 43-44, but Plaintiff does not discuss the examples or address the ALJ's reasoning. ECF No. 12 at 10-11. For example, Plaintiff testified she does not go out often due to agoraphobia, Tr. 77, but she has never been diagnosed with agoraphobia and, in fact, Dr. Arnold diagnosed her with panic disorder *without* agoraphobia. Tr. 43, 330. The Court concludes the examples cited by the ALJ are based on a reasonable interpretation of the evidence and are supported by the record. This is a clear and convincing reason supported by substantial evidence.

Fourth, the ALJ found Plaintiff's work history undermines her allegations. Tr. 43-44. The claimant's work record is an appropriate consideration in weighing the claimant's symptom complaints. *Thomas*, 278 F.3d at 958-59; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011). The ALJ noted Plaintiff's work history is sporadic before the alleged onset date and concluded the allegation that her

unemployment is due to medical impairments is therefore questionable.[2]  Tr. 44, 213, 216-17.  Similarly, the ALJ noted that Plaintiff testified she stopped working because she was unable to get to work because her anxiety and depression prevented her from driving, Tr. 74-75, but she did not complain of difficulty driving to her treating physician during the period at issue.  Tr. 44, 287-328, 338-401, 407-10; *see also* Tr. 333 (counseling note indicates that "anxiety affects her ability and desire to drive on her own where a distance is required").

Without citing any authority or her earnings record, Plaintiff characterizes her work history as "rather robust" but makes no argument regarding the ALJ's finding.  ECF No. 12 at 11.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2007) (declining to address issues not argued with specificity).  Although Plaintiff may characterize the evidence differently, the ALJ's finding is supported by the record. The existence of a legally supportable alternative resolution of the evidence does not provide a sufficient basis for reversing an ALJ's decision that is supported by substantial evidence.  *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir.1987).  Thus, this is a clear and convincing

---

[2] Between 2004 and 2013, Plaintiff had only three years with average monthly earnings sufficient to presumptively qualify as substantial gainful activity.  Tr. 212; *see* Monthly Substantial Gainful Activity Amounts By Disability Type chart, *available at* https://www.ssa.gov/oact/cola/sga.html.

reason supported by substantial evidence for giving less weight to Plaintiff's symptom claims.

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider the opinions of examining psychologist John Arnold, Ph.D., and treating physician, Charles Hough, M.D.  ECF No. 12 at 12-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)."  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by

clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(internal quotation marks and brackets omitted). "If a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial

evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

### 1. John Arnold, Ph.D.

In May 2015, Dr. Arnold completed a DSHS Psychological/Psychiatric

Evaluation form. Tr. 329-32. He diagnosed persistent depressive disorder and panic

disorder without agoraphobia. Tr. 330. Dr. Arnold opined that Plaintiff could

understand, remember and persist in tasks by following short and simple

instructions, but assessed moderate limitations in seven functional areas and marked

limitations in five functional areas: the ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances;

the ability to adapt to changes in a routine work setting; the ability to be aware of

normal hazards and take appropriate precautions; the ability to maintain appropriate

behavior in a work setting; and the ability to complete a normal work day and work

week without interruptions from psychologically based symptoms. Tr. 331.

The ALJ gave significant weight to Dr. Arnold's opinion that Plaintiff can

follow very short and simple instructions because it is mostly consistent with the

record showing no problems in that area. Tr. 45. However, the ALJ gave little

weight to the remainder of Dr. Arnold's opinion regarding Plaintiff's limitations. Tr. 45-46.

Because Dr. Arnold's opinion was contradicted by the opinion of the medical expert, Nancy Winfrey, Ph.D., Tr. 59-66, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Arnold's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Arnold's opinion is not supported by or consistent with the longitudinal record. Tr. 45. An ALJ may discredit a treating physician's opinion which is unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ observed, for example, that Dr. Arnold's assessment of a marked limitation in the ability to be aware of hazards and take appropriate precautions is not supported by any treatment notes. Tr. 45. The ALJ noted that the records of treating physician Dr. Hough indicate no difficulty in this area and no treatment for any issues resulting from a lapse in awareness or precautions regarding hazards. Tr. 45, 287-328, 338-401, 407-10. Plaintiff contends this finding "lacks any rational basis because treatment records do not span a time during which [Plaintiff] was working and therefore exposed to workplace hazards that would result in treatment." ECF No. 12 at 13. However, the marked limitation assessed by Dr. Arnold involves "normal hazards," not necessarily workplace hazards. Tr. 331.

More importantly, as noted by Defendant, the ALJ's point is that Dr. Hough never expressed concern about Plaintiff's ability to take precautions or avoid

hazards. ECF No. 13 at 12. Therefore, it reasonably follows that there is no basis for a marked limitation in that area. Without citing any authority, Plaintiff asserts that Dr. Arnold's finding that her memory was not within normal limits during the mental status exam "bears a more logical relationship to an accurate measurement of her ability in this regard." ECF No. 12 at 13. Plaintiff's argument fails because it is speculative and without basis in the record.

Another example noted by the ALJ is that the marked limitation assessed by Dr. Arnold regarding the ability to adapt to changes in routine is contradicted by numerous personal changes Plaintiff underwent over the course of the record, including meeting and becoming engaged to her fiancé and her testimony that her son lived with her for a time. Tr. 45-46, 77-78, 83, 335, 408. Plaintiff contends these changes in her personal routine have "little to do with her ability to adapt to changes in a competitive work environment," and observed that the medical expert opined that Plaintiff should not have a high-stress or time-pressured job. ECF No. 12 at 14 (citing Tr. 45, 64). However, a marked limitation in the ability to adapt to changes in routine, as defined on the DSHS form completed by Dr. Arnold, means a "very significant limitation" in the ability adapt to changes. Tr. 331. The ALJ reasonably concluded this is at odds with various events indicating Plaintiff can adapt to changes in her personal life.

Furthermore, to the extent she is not able to adapt to change, the ALJ credited Dr. Winfrey's opinion and limited the RFC finding to routine, predictable

work environment that requires no more than simple decision-making, and no production-rate pace work. Tr. 41, 64. Thus, the ALJ did not find Plaintiff has no limitation in this area, but reasonably determined that the marked limitation assessed by Dr. Arnold is excessive.

Second, the ALJ found Dr. Arnold's opinion is inconsistent with his own exam findings. Tr. 46. A discrepancy between a provider's clinical notes and observations and the provider's functional assessment is a sufficient reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. The ALJ observed that although Dr. Arnold opined Plaintiff has a marked limitation in maintaining appropriate behavior, he found Plaintiff to be cooperative with normal thought processes and content, normal orientation and perception, normal ability for abstract thought, and with fair insight and judgment.[3] Tr. 46, 331-32. The ALJ

---

[3] Plaintiff notes the ALJ stated the mental status exam findings indicated a normal fund of knowledge, when in fact the box for that finding is checked to indicate the finding was not within normal limits. ECF No. 12 at 14; Tr. 46, 332. Notwithstanding, the minimal notes for the fund of knowledge category indicate no apparent abnormalities since "News: Mariners doing OK" and "Border states: ID/Ore" were appropriate responses. Tr. 332. To the extent the ALJ misstated Dr. Arnold's conclusion on this issue, any error is harmless. Harmless error occurs when an error is inconsequential to the ultimate nondisability determination. *See*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~19

also noted that Dr. Arnold assessed a GAF score of 57 indicating moderate

impairment,[4] but indicated Plaintiff does not need a protective payee, suggesting

that she can manage her own money.  Tr. 46, 331.   Dr. Arnold assessed Plaintiff as

markedly or moderately limited in every functional category but one, yet

recommended Plaintiff participate in vocational rehabilitation services, suggesting

the ability to work is not foreclosed.  Tr. 46, 331.  The ALJ reasonably concluded

these internal inconsistencies undermine Dr. Arnold's findings.

Plaintiff argues the ALJ should not have evaluated the GAF score assessed by

Dr. Arnold because elsewhere in the decision, the ALJ explained that GAF scores

_Carmickle_, 533 F.3d at 1162; _Stout v. Comm'r of Soc. Sec. Admin._, 454 F.3d 1050,

1055 (9th Cir. 2006); _Batson_, 359 F.3d at 1195-97.  It is also noted that the ALJ

omitted from the litany of normal mental status exam findings that Plaintiff's

concentration was within normal limits.  Tr.  332.

[4] Clinicians use a GAF to rate the psychological, social, and occupational

functioning of a patient.  The scale does not evaluate impairments caused by

psychological or environmental factors.  _Morgan v. Comm'r of Soc. Sec. Admin._,

169 F.3d 595, 598 (9th Cir. 1999).  A GAF score of 51-60 indicates moderate

symptoms or any moderate impairment in social, occupational or school

functioning.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32

(Am. Psychiatric Ass'n 4th ed.) (1994).

are unreliable indicators of disability. ECF No. 12 at 15 (citing Tr. 45). Plaintiff misses the point. The issue is that Dr. Arnold's assessments of Plaintiff's ability are inconsistent, as evidenced in part by the contrast between the assessment of a lower GAF score alongside statements of greater abilities. This inconsistency undermines the reliability of Dr. Arnold's opinion overall, regardless of whether the GAF score is valid. Plaintiff further argues the DSHS form "required" the assessment of a GAF score, even though GAF scores are not indicators of disability or current protocol under the DSM-V.[5] This argument is unpersuasive, as Dr. Arnold left the box asking for the "Basis for GIF rating" blank, opting not to explain the basis for his assessment even though it was also "required" by the form. Tr. 331. Additionally, even if assessing a GAF score was "required," the inconsistency between the GAF score and other abilities mentioned in Dr. Arnold's assessment remains.

Third, the ALJ found Dr. Arnold relied heavily on Plaintiff's subjective reports. Tr. 46. A physician's opinion may be rejected if it is based on a claimant's

---

[5] The Commissioner has explicitly disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Moreover, the GAF scale is no longer included in the DSM–V. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (Am. Psychiatric Ass'n 5th ed.) (2013).

subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). The ALJ noted Dr. Arnold did not have the opportunity to review any treatment notes before issuing his check-box opinion based on a single examination. Tr. 46. An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Plaintiff contends the ALJ "does not consider" Dr. Arnold's observations, testing and findings, ECF No. 12 at 16, but as discussed *supra*, the ALJ reasonably determined the level of limitations assessed by Dr. Arnold are not supported by or are inconsistent with his observations and findings.

Fourth, the ALJ noted the medical expert, Dr. Winfrey, opined that the limitations assessed by Dr. Arnold are disproportionate to the contents of his report. Tr. 46. The opinion of an examining or treating physician may be rejected based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989)); *Roberts v. Shalala*, 66 F.3d 179 (9th

Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Dr. Winfrey testified that she relied on the description and interview information recorded by Dr. Arnold, but that she found his ratings disproportionate or incongruent with Plaintiff's actual functioning. Tr. 65-66. Dr. Winfrey cited other evidence in the record supporting her opinion, Tr. 59-63, and the ALJ gave other specific, legitimate reasons supported by substantial evidence for rejecting most of the limitations assessed by Dr. Arnold. Thus, this is an appropriate basis for giving little weight to Dr. Arnold's opinion.

### 2. Charles Hough, M.D.

Plaintiff contends the ALJ improperly rejected the opinion of Dr. Hough, a treating physician. ECF No. 12 at 16-17.

Dr. Hough prepared an undated letter indicating he had reviewed Dr. Arnold's opinion and agreed with his assessment. Tr. 405. Dr. Hough opined, "I do not believe [Plaintiff] is capable of gainful employment due to her mental illness." Tr. 405. He indicated anxiety and depression cause difficulty with concentration, learning new tasks, adaptability, and following through with commands. Tr. 405. The ALJ gave little weight to Dr. Hough's opinion. Tr. 46.

Because Dr. Hough's opinion was contradicted by the opinion of the medical expert, Nancy Winfrey, Ph.D., Tr. 59-66, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Hough's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Hough's opinion is not consistent with or supported by the longitudinal evidence of record, including Dr. Hough's own treatment notes. Tr. 46. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A physician's opinion may also be rejected if it is unsupported by treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). For example, the ALJ noted Dr. Hough agreed with the marked limitation assessed by Dr. Arnold regarding Plaintiff's ability to behave appropriately in a work setting, but Dr. Hough's treatment notes do not indicate any social functioning symptoms which would support a marked limitation. Tr. 46, 287-328, 338-401, 407-10. Plaintiff faults the ALJ for making "vague references" to Dr. Hough's records, but the ALJ cannot cite a nonexistent record, and Plaintiff identifies no records contradicting the ALJ's conclusion or supporting the opinions of Dr. Hough and Dr. Arnold. Plaintiff also contends the ALJ "does not explain the finding of inconsistency with the record in general," ECF No. 12 at 16. Dr. Hough adopted Dr. Arnold's opinion, so the ALJ's legally sufficient explanation for rejecting Dr. Arnold's applies equally to Dr. Hough's opinion.

Second, the ALJ found Dr. Hough's opinion is conclusory, contains very little explanation, and is undated. Tr. 46. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. The quality of the explanation provided in the opinion is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ's characterization of Dr. Hough's opinion as conclusory is reasonable. Plaintiff does not address or contest this reason and any argument is therefore waived. *Bray*, 554 F.3d at 1226 n.7 (noting an argument not made in the opening brief is deemed waived). This is a specific, legitimate reason supported by substantial evidence.

The ALJ also noted that Dr. Hough's recommended that Plaintiff obtain a mental health consultation and that Plaintiff failed to pursue mental health treatment. Tr. 46; *see also* ECF No. 12 at 17; ECF No. 13 at 15. As discussed *supra*, an ALJ may discredit a claimant's symptom complaints if the claimant fails to show good reason for failing to follow treatment recommendations. *Smolen*, 80 F.3d at 1284. However, the fact that a claimant fails to pursue treatment is not directly relevant to the weight of a medical provider's opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012). Nonetheless, the ALJ cited specific, legitimate reasons supported by substantial evidence for giving little weight to Dr. Hough's opinion.

# CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 13, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~26